Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| B&C Luxury Auto, LTD.,<br><br>              Plaintiff,<br><br>v.<br><br>Intex Cargo, Inc., *et al.*,<br><br>              Defendants. | Civil Action No.: 22-03229 (ES) (JRA)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff B&C Luxury Auto, Ltd. ("Plaintiff" or "B&C") initiated this action against Defendants Intex Cargo, Inc. ("Intex" or "Defendant Intex"), Alejandrina Rosa ("Defendant Rosa"), and Francys Iliana Alvarez ("Defendant Alvarez") (together the "Individual Defendants"), bringing contract and fraud claims. (D.E. No. 1-2 ("Complaint" or "Compl.")). Before the Court is Defendants' joint motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Rule 12(b)(3), or alternatively to transfer venue to the Southern District of Texas-Houston Division pursuant to 28 U.S.C. § 1406(a) or § 1404(a). (D.E. No. 6). The motion is fully briefed. (D.E. No. 6-4 ("Mov. Br."); D.E. No. 10 ("Opp. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the foregoing reasons, Defendants' motion is **GRANTED-in-part** and **DENIED-in-part**.

1

I.  BACKGROUND

   A.  Parties

Plaintiff is a licensed shipping broker that specializes in transporting, storing, and shipping goods and vehicles internationally. (Opp. Br. at 2; Compl. ¶ 1). Plaintiff is incorporated in New Jersey, and its principal place of business is in Newark, New Jersey. (Compl. ¶ 1). Defendant Intex is a corporation that is also in the business of shipping goods and vehicles overseas. (*Id*. ¶ 2). At all relevant times, Plaintiff was primarily in the business of transporting vehicles overseas, while Defendant Intex was primarily in the business of shipping parcels overseas. (Opp. Br. at 2). Defendant Intex is incorporated in Texas and its principal place of business is in Houston, Texas. (Compl. ¶ 2; D.E. No. 6-5 ("Alvarez Aff.") ¶ 3). Defendant Alvarez is an officer, agent, employee and owner of Intex and is a citizen and resident of Texas. (Compl. ¶ 3; Alvarez Aff. ¶¶ 1–2). Defendant Rosa is an officer, agent, and employee of Intex and is a citizen and resident of Texas. (Compl. ¶ 4; Mov. Br. at 8, 13).

   B.  Factual Background[1]

In November 2019, B&C contacted Fidel Rubio—an agent of one of B&C's existing customers at the time, ATM Cargo—to solicit business. (Opp. Br. at 2). Rubio informed B&C that he was no longer working for ATM Cargo, but was working for a family business, Intex, which "was struggling financially" and "had an interesting business proposition for B&C Luxury that he wished to discuss in person." (*Id*.). In or around November 2019, Rubio travelled to New Jersey on behalf of Intex to meet with the President of B&C, Sergiu Bejenari, and proposed a business relationship whereby B&C would open an office in Houston, Texas and "share the office

---

[1] The facts are drawn primarily from Plaintiff's opposition brief, as the Complaint is almost entirely devoid of facts pertaining to the alleged business relationship between B&C and Intex which forms the basis of Plaintiff's claims. On a 12(b)(2) motion, courts look outside the pleadings for support for personal jurisdiction. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004).

2

space, warehouse space and operating expenses" with Intex. (*Id*. at 2–3). The proposed business relationship was intended "to alleviate Intex from the financial pressure" it was experiencing and "provide B&C Luxury with an expansion opportunity." (*Id*. at 3). Pursuant to the initial proposal, the companies would otherwise operate independently. (*Id*.). B&C accepted Intex's initial proposal and opened an office at Intex's location in Houston, Texas in December 2019. (*Id*.). B&C took over rent payments and Intex reimbursed B&C for a portion of the rent. (*Id*.).

Between December 2019 and December 2021, while the parties were sharing office space in Texas, Intex routinely asked B&C to ship vehicles overseas on behalf of Intex without requiring pre-payment of the shipping costs, though pre-payment is typical in the industry. (*Id*. at 4). B&C agreed, and pursuant to this agreement, B&C shipped "hundreds" of vehicles overseas for Intex without requiring any pre-payment from Intex, and Intex agreed to pay for B&C's services after receiving payment from its customers. (*Id*.). Intex allegedly agreed to reimburse "all costs to Plaintiff[] plus a modest profit of 10%." (Compl. ¶ 8). To date, Defendants allegedly owe B&C $238,196.68, which includes outstanding shipping costs and rent payments. (*Id*. ¶ 9; *Id*. Exhibit A).

  **C.** **Procedural History**

Plaintiff initiated this action in the Superior Court of New Jersey Law Division: Essex County on April 26, 2022, bringing seven counts against all Defendants for (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; (iii) unjust enrichment; (iv) quantum meruit; (v) book account; (vi) promissory estoppel; and (vii) common law fraud. (*See* Compl. ¶¶ 10–40). On May 27, 2022, Defendants removed the action to this Court. (D.E. No. 1). On June 3, 2022, Defendants filed the instant motion to dismiss, which is fully briefed. (D.E. No. 6; Mov. Br.; Opp. Br.). Plaintiff did not request any jurisdictional discovery to oppose the motion.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Still, the plaintiff must establish the "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id.* at 101 n.6 (citation and internal quotation marks omitted).

## III. DISCUSSION

A federal court has jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which the court sits, so long as the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 4(e); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' we 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)); N.J. Court Rule 4:4-4(c). Personal jurisdiction may be

established through either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).[2]

Specific jurisdiction arises from "an affiliation between the forum and the underlying controversy," and a district court exercising specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 582, U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). For a court to exercise specific jurisdiction, it must determine that (i) the defendant "purposefully directed its activities at the forum"; (ii) the litigation "arises out of or relates to at least one of those activities"; and (iii) the exercise of jurisdiction would "otherwise comport with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up). In the Third Circuit, the specific jurisdiction analysis is defendant-specific and claim-specific. *See Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (explaining that a court must assess specific jurisdiction as to each defendant); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (explaining that a court must assess specific jurisdiction as to each claim). Accordingly, the Court will assess whether Plaintiff has met its burden of establishing that this Court has specific personal jurisdiction over each Defendant with respect to Plaintiff's claims.

      A.      **Personal Jurisdiction Over Intex**

***Purposeful Availment.*** In assessing purposeful availment, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To determine whether a plaintiff has established the requisite minimum

---

[2] Plaintiff contends only that this Court can exercise specific jurisdiction over Defendants. (Opp. Br. at 5 ("B&C Luxury does not argue the existence of general jurisdiction.")).

contacts for the court to exercise specific jurisdiction over a defendant for contract claims, courts "consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256 (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). This includes inquiring into "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). "Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141,150 (3d Cir. 1992)). However, if the parties establish a long-term relationship, "actual territorial presence becomes less determinative." *Id*. (citing *Gen. Elec. Co.*, 270 F.3d at 151).

Here, Defendants argue that "Plaintiff cannot possibly establish that the Court has personal jurisdiction over any of the Named Defendants because none of them has, or ever has had, any contact with the state of New Jersey other than Intex's brief business relationship with Plaintiff." (Mov. Br. at 6 (citing Alvarez Aff. ¶ 6)). Specifically, Defendants argue that "all of Intex's business activities—including those activities specifically identified by Plaintiff—occurred within Houston, Texas." (*Id*. at 8 (citing Alvarez Aff. ¶4)). Plaintiff opposes and argues that "Intex affirmatively sought to do business with a New Jersey company by traveling to New Jersey to negotiate a proposal which would give Intex a financial lifeline and reduce its operating expenses in Houston." (Opp. Br. at 6). Plaintiff additionally points to the parties' ongoing business relationship, the fact that Plaintiff "has been financially harmed in New Jersey," and that Defendants "utilized B&C Luxury's broker's accounts with international shippers, which were established in New Jersey" as supporting the Court's personal jurisdiction over Defendants. (*Id* at

6

7). Finally, Plaintiff argues that "[a]t all times Intex was well aware it was dealing with a New Jersey company." (*Id.*).

Taking Plaintiff's allegations as true and drawing all inferences in Plaintiff's favor, the Court finds that that the following facts support specific jurisdiction over Intex with respect to Plaintiff's claims.[3] First, Fidel Rubio travelled to New Jersey on behalf of Intex in order to initiate an ongoing business relationship with B&C. (Bejenari Cert. ¶¶ 5–7); *see Burger King Corp.*, 471 U.S. at 473 ("[W]ith respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.") (quotation marks and citations omitted); *Myers Enters., LLC v. Dawah Pharm., Inc.*, No. 19-8958, 2019 WL 6271612, at *4 (D.N.J. Nov. 25, 2019) (finding specific jurisdiction was proper in part because "the subject contract envisioned an ongoing relationship between the parties that necessitated Defendant's repeated electronic and physical forays into the state") (emphasis omitted). Thus, the parties' ongoing business relationship, and initial agreement thereto, was formed in New Jersey. Second, the alleged breach of the parties' agreement is felt by B&C in New Jersey. More specifically, B&C paid rent on the Houston office space and costs to ship vehicles on behalf of Intex from its New Jersey bank account, and was sent bills for the shipping costs to New Jersey. (Opp. Br. at 7–8). Intex reimbursed B&C to this New Jersey bank account, and the outstanding balance is allegedly owed by Intex to the New Jersey bank account.

---

[3] The Court notes that Plaintiff has hardly submitted "actual proofs" in support of its specific jurisdiction arguments. *Miller Yacht Sales*, 384 F.3d at 101 n.6 (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603–04 (3d Cir. 1990)). The Complaint does not contain any facts to support this Court's assertion of jurisdiction over each Defendant, and most of the jurisdictional facts were first raised in the parties' briefing. Nonetheless, Plaintiff did provide a sworn certification from Sergiu Bejenari, B&C's President. (D.E. No. 10-1 ("Bejenari Cert.")). Because the Bejenari Certification provides factual support for a prima facie case for specific jurisdiction, at least over Defendant Intex, and because Defendants have not argued that Plaintiff's proofs were insufficient, the Court is satisfied with this evidence at this time.

(Bejenari Cert. ¶¶ 7 & 11–12); *Telcordia Tech Inc.*, 458 F.3d at 178 (finding specific jurisdiction was proper in part because "the breach of contract, *i.e.*, the failure to pay for contractually compliant software, occurred when payment was not placed in a New Jersey bank pursuant to the parties' course of dealings"). Though the parties' agreement included sharing office space in Houston, Texas, this is not determinative of personal jurisdiction, which here is supported by other facts of record. *Telcordia Tech Inc.*, 458 F.3d at 178 ("[T]he fact that the contract called for the establishment of an office in South Africa is not determinative.") (citation omitted). In sum, the Court finds that these facts are sufficient to establish that Defendant Intex had the requisite minimum contacts with New Jersey such that it "purposefully directed its activities" at New Jersey. *O'Connor*, 496 F.3d at 325.

Defendant's arguments do not lead to a contrary conclusion. Defendant argues that during the relevant period, "all of Intex's business activities—including those activities specifically identified by Plaintiff—occurred within Houston, Texas." (Mov. Br. at 8 (citing Alvarez Aff. ¶ 4)). However, this fact is disputed by Plaintiff, who argues that it arranged to ship Defendant Intex's vehicles through contact lists made in New Jersey, received invoices for that shipping in New Jersey, paid costs for the shipping and rent from its New Jersey bank account, and is owed the outstanding balance to its New Jersey bank account. (Opp. Br. at 7–8; Bejenari Cert. ¶¶ 11–12). At this point in the litigation, the Court must resolve all factual disputes in Plaintiff's favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

***Arising out of contacts.*** To establish personal jurisdiction, a plaintiff must also demonstrate that its claims arise out of the defendant's contacts with the forum. *Ford*, 141 S. Ct. at 1026. In this way, the first two requirements for specific jurisdiction—that the defendant purposefully availed itself of the privilege of doing business in the forum state and that the

8

plaintiff's claims arise out of the contacts which establish the defendant's purposeful availment—are assessed together. *Id*. Having found here that Plaintiff has established the requisite minimum contacts between Defendant Intex and New Jersey, the Court next finds that the litigation arises directly from those contacts—Plaintiff brings contract and fraud claims for Defendants' failure to reimburse Plaintiff's New Jersey bank account for rent payments and shipping costs paid from that account. As stated above, those claims arise directly out of the business relationship B&C and Intex formed in New Jersey.[4]  (Opp. Br. at 7).

**Fair Play and Substantial Justice.**  Lastly, the Court must determine whether the exercise of jurisdiction would "otherwise comport[] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (quotations and citations omitted). The Court should consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (quotations omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Notably, after a plaintiff has established minimum contacts, it is the defendant's burden to show that the assertion of jurisdiction would be unfair. *Farino*, 960 F.2d at 1226 (collecting cases). And "[t]he burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."

---

[4]  In the Third Circuit, specific jurisdiction is typically determined on a claim-by-claim basis. *See Remick*, 238 F.3d at 255. However, in *Remick* the Third Circuit recognized that "[i]t may not be necessary to do so in every multiple claim case." *Id*. Here, Plaintiff's common law fraud and book account claims arise out of the same "series of transactions" as its contract and quasi-contract claims. (Compl. ¶ 36). In fact, Plaintiff alleges that "Defendants' false, malicious and fraudulent misrepresentations were material to the agreement between the parties." (*Id*. ¶ 37). Accordingly, the Court finds that "we need not analyze [the claims] separately." *O'Connor*, 496 F.3d 312 at 317 n.3; *see also Malek v. Chef's Roll, Inc.*, No. 18-03205, 2019 WL 3854303, at *6 n.4 (D.N.J. Aug. 16, 2019) (finding that "it is not necessary to analyze [the plaintiff's] fraud claim separately" because the plaintiff "bases his fraud claim on substantially the same facts as his contract and quasi-contract claims").

9

*O'Connor*, 496 F.3d at 324 (quoting *Grand Ent. Grp., Ltd. v. Start Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993)).

Here, Defendants have made only the conclusory statement that "the exercise of personal jurisdiction by the Court over any Named Defendant would, effectively, hale the Named Defendant into the state of New Jersey for attenuated contact and/or unilateral conduct of the Plaintiff, [] offend that Defendant's right to due process, and [] fail to comport with the requirement of 'fair play and substantial justice.'" (Mov. Br. at 16 (citing *O'Connor*)). Plaintiff argues that the Court's exercise of jurisdiction would comport with fair play and substantial justice because (i) as a New Jersey court, the Court has "a strong interest in providing B&C Luxury with a forum to enforce its contractual rights against an out of state company" given that New Jersey is B&C's home forum; (ii) litigating in New Jersey will not be burdensome to Intex because "discovery can and should proceed remotely"; (iii) it would be burdensome to B&C to litigate outside of New Jersey; (iv) "B&C has a strong interest in applying New Jersey laws, which this Court is in the best position to perform"; (v) and Texas and New Jersey have "a shared interest in enforcing interstate contracts." (Opp. Br. at 10). The Court agrees with Plaintiff that exercising specific jurisdiction over Defendant Intex would not violate traditional notions of fair play and substantial justice.

Defendants fail to make any arguments or point to any factors apart from the burden upon themselves of litigating in New Jersey to suggest that this Court's exercising personal jurisdiction over them would violate due process principles. And the other factors favor a finding that the Court's exercise of jurisdiction over at least Defendant Intex in this case would not be unfair. *See Myers*, 2019 WL 6271612, at *5 ("New Jersey has a decided interest in protecting residents from breaches of contract and subsequent economic harm and Plaintiff has a substantial interest in obtaining relief in New Jersey, given that Plaintiff feels the effect of any breach here.") (quotations

and citations omitted). Further, to the extent Defendants premise their claim that this Court's assertion of jurisdiction over them would be unfair on their claim that they lack minimum contacts with New Jersey, this Court has already found that Plaintiff has established the requisite minimum contacts between New Jersey and Defendant Intex. Defendants have failed to meet their burden of establishing that the Court's exercise of specific jurisdiction over Defendant Intex would be unreasonable. *See Miller Yacht Sales*, 384 F.3d at 97. Accordingly, the Court finds that Plaintiff has met its burden of establishing that this Court has specific personal jurisdiction over Defendant Intex.

### B. Personal Jurisdiction Over Individual Defendants

"Each defendant's contacts with the forum state must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984); *Nicholas*, 224 F.3d at 184 (citing *Keeton*, 465 U.S. at 781 n.13). Notably, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton*, 465 U.S. at 781 n.13. Minimum contacts with the forum state must therefore be established with respect to individual defendants irrespective of a corporate employer's contacts. *Sathianathan v. Pac. Exch., Inc.*, 248 F. App'x. 345, 347 (3d Cir. 2007) (affirming the district court's finding that it lacked personal jurisdiction over the individual defendants based on "a handful of telephone calls, e-mails, and letters," even though it had personal jurisdiction over the corporate defendant). Further, "an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 552–53 (D.N.J. 2018) (citations omitted). Rather, "actions taken by a defendant in his or her corporate capacity may only be used to establish personal jurisdiction over the defendant where those actions

tend to establish individual liability." *Collins v. James W. Turner Constr., Ltd.*, No. 16-2877, 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017) (quotations and citations omitted).

Here, Defendants broadly argue that "[t]he individual Named Defendants Alvarez and Rosa have not even set foot within [New Jersey], much less had any personal, commercial, or business connection with it." (Mov. Br. at 9 (citing Alvarez Aff. ¶¶ 7–10); *id*. at 13–14). Plaintiff makes no arguments regarding whether the Court can exercise personal jurisdiction over the Individual Defendants and instead focuses its arguments on Defendant Intex's contacts with New Jersey. (*See, e.g.*, Opp. Br. at 6 ("*Intex* affirmatively sought to do business with a New Jersey company.") (emphasis added); *Id*. at 7 ("*Intex* successfully induced B&C Luxury to open up another location in Houston, Texas . . . *Intex* reimbursed B&C Luxury for rent payment . . . *Intex* further utilized B&C Luxury's broker's accounts.") (emphasis added)). For the following reasons, the Court finds that Plaintiff has failed to establish that the Court may exercise specific personal jurisdiction over the Individual Defendants.

With respect to the Individual Defendants, the Complaint alleges only that they are employees, agents, and owners of Intex and that they and their company, Intex, "requested that Plaintiff . . . permit Defendants to use Plaintiff's established transportation accounts to transport goods on Defendants' behalf, and Defendants promised to reimburse all costs to Plaintiff[] plus a modest profit of 10%." (Compl. ¶¶ 3–4, & 8). The Complaint does not clarify whether Plaintiff seeks to hold the Individual Defendants liable in their individual or corporate capacities. Regardless, nothing in Plaintiff's Complaint, Plaintiff's Opposition Brief, or Sergiu Bejenari's certification provide facts regarding *any* actions taken specifically by Defendant Alvarez or Defendant Rosa in either their individual or corporate capacities, let alone facts establishing their contacts with New Jersey. Rather, according to Defendant Alvarez's affidavit, Defendants Alvarez

and Rosa are both citizens and residents of Texas, and neither has had any "personal, commercial, or business connection to, or contact with, the State of New Jersey" apart from Intex's business relationship with Plaintiff. (Alvarez Aff. ¶¶ 7–10). It is not clear from the record before the Court what role the Individual Defendants played in that business relationship, or whether their contacts with New Jersey were sufficient to satisfy due process. Thus, the Court finds that Plaintiff has failed to provide sufficient facts to establish whether the Court has specific jurisdiction over the Individual Defendants.

### C. Venue

Defendants additionally move for dismissal of this action pursuant to Rule 12(b)(3) for improper venue, or in the alternative, to transfer venue to the Southern District of Texas-Houston Division pursuant to 28 U.S.C. § 1406(a) or § 1404(a). (Mov. Br. at 16, 19). Plaintiff opposes, arguing that venue in the District of New Jersey is proper, and that the relevant public and private interest factors support litigating the action in the District of New Jersey. (Opp. Br. at 11–12). Because the Court finds that Plaintiff has not established personal jurisdiction as to the Individual Defendants, and because the Court finds that this is a relevant consideration under either inquiry, the Court declines to consider whether dismissal pursuant to Rule 12(b)(3) or transfer is appropriate at this time.

### IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion is **GRANTED-in-part** and **DENIED-in-part**. Plaintiff's Complaint is dismissed *without prejudice* as against Defendants Alvarez and Rosa. Plaintiff shall have 30 days to file an amended complaint. An appropriate Order accompanies this Opinion.

**Dated:** March 17, 2023

                                                  **Esther Salas, U.S.D.J.**